UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00212-GNS

UNIVERSITY OF LOUISVILLE; and
UNIVERSITY OF LOUISVILLE FOUNDATION            PETITIONERS

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH INC.; and
TERRY C. DANZIGER            RESPONDENTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Respondent's Motion to Dismiss (DN 5). For the reasons stated below, Respondent's Motion to Dismiss is **GRANTED**, and this matter is **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 19(b).

### I.    BACKGROUND

This case concerns a dispute over the disbursement of a $500,000 charitable gift of an individual retirement account ("IRA") from Dr. Franklin Danziger ("Dr. Danziger") to Petitioner University of Louisville ("University") to fund scholarships within the University's School of Medicine. The gift was memorialized in a Charitable Gift Agreement ("Agreement"). (Pet. Ex. A, DN 1-1). Under the terms of the Agreement, the funds were to be disbursed from Dr. Danziger's IRA upon his death pursuant to the IRA's beneficiary designation. (Eriksen Aff. ¶ 23, DN 10-2). Dr. Danziger added language to the IRA beneficiary designation form instructing Respondent Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") to follow the directives of his wife, Respondent Terry Danziger ("Danziger"), "if there [were] any question

regarding the agreement, and whether or not the School of Medicine [would] receive the distribution." (Eriksen Aff. ¶ 31). Following her husband's death, Danziger revoked the gift on the basis that the Agreement did not reflect his intent. (Eriksen Aff. ¶ 36).

University and Petitioner University of Louisville Foundation, Inc. (collectively "Petitioners") filed a lawsuit action against Merrill Lynch and Danziger in state court to determine the enforceability of the terms of the beneficiary designation form. (Pet. ¶¶ 27-32, DN 1-1). Danziger removed that lawsuit to this forum and moved to dismiss this action due to lack of personal jurisdiction. (Notice Removal, DN 1; Resp't's Mot. Dismiss, DN 5).

## II. DISCUSSION

### A. Danziger's Motion to Dismiss

Danziger has moved to dismiss any claim asserted against her based on lack of personal jurisdiction. (Resp't's Mem. Supp. Mot. Dismiss 2-12, DN 5-1). In particular, she asserts that: (i) she was not transacting business in the Commonwealth of Kentucky to satisfy KRS 454.210; (ii) this dispute did not arise from any connection that she had to this forum; and (iii) this Court lacks both general and specific jurisdiction over her.[1] (Resp't's Mem. Supp. Mot. Dismiss 2-12).

Under Fed. R. Civ. P. 12(b)(2), a litigant may challenge the Court's authority to entertain an action against her for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction comes in two forms: general and specific. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678-79 (6th Cir. 2012). General jurisdiction arises when a defendant has affiliations so "continuous and systematic" with a forum as render the person "essentially at home" there, thus allowing courts in that forum to exercise jurisdiction over any and all claims

---

[1] While Danziger requests an evidentiary hearing, the Court has determined that a hearing is unnecessary to address the issues raised in her motion. (Resp't's Mem. Supp. Mot. Dismiss 12-13).

2

against her. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Specific jurisdiction, on the other hand, arises from "minimum contacts" between a person and the forum, and permits the forum's courts to adjudicate "issues deriving from, or connected with," those particular contacts. *Id.* (citation omitted). When a district court rules on a jurisdictional motion to dismiss, without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. To defeat such a motion, the plaintiff need only make a prima facie showing of jurisdiction and the court should not weigh the controverting assertions of the party seeking dismissal. *Dean v. Motel 6 Operating*, 134 F.3d 1269, 1272 (6th Cir. 1998).

In determining whether personal jurisdiction exists over a nonresident defendant, the Court must apply the law of the state in which it sits. *Third Nat'l Bank v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), the Supreme Court of Kentucky overruled its prior line of cases which held the Kentucky's long-arm statute permitted Kentucky courts to exercise jurisdiction over non-resident defendants as long as it was within the bounds of federal due process. *See id.* at 57. The court clarified that "[o]nly after the requirements of KRS 454.210 have been satisfied can it be said that personal jurisdiction over a non-resident defendant extends to the outer limits permitted by federal due process." *Id.* It created a two-step process to apply proper long-arm jurisdiction:

> First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Id*.

In this analysis, it must first be determined which provision of the long-arm statute applies in the case *sub judice*. Interpreting KRS 454.210(2)(a), the Kentucky Supreme Court noted "[w]hile we believe it fair to say that these provisions should be liberally construed in favor of long-arm jurisdiction, their limits upon jurisdiction must be observed as defined." *Id*. at 56. Here, the only plausible basis for long-arm jurisdiction over Danziger is the subsection applicable to defendants who are "[t]ransacting any business in this Commonwealth . . . ." KRS 454.210(2)(a)(1).

The underlying facts of this case reflect the following pertinent contacts: (1) Danziger contacted the Office of Advancement to advise that Dr. Danziger was interested in making an endowment to the Foundation; (2) the Office of Advancement and the Danzigers discussed Dr. Danziger's desire to make a donation to the School of Medicine; (3) Dr. Danziger signed a declaration of intent; (4) Danziger and her mother went to Louisville, Kentucky, to attend Muhammad Ali's birthday celebration and had lunch with the wife of Lukas Dwelly ("Dwelly"), who serves as the University's Office of Advancement's contact person, and Dwelly's daughters. All of the contacts and communications between the parties regarding the Agreement were conducted while the Danzigers were physically located in Arizona.

It does not appear that Danziger engaged in any conduct related to the Agreement which could be characterized as transacting business in Kentucky. Even before the *Caesars* decision interpreted the Kentucky long-arm statute more conservatively, the Kentucky Court of Appeals held "it would be unreasonable for Kentucky to exercise jurisdiction over [the defendant] solely on the basis of negotiations by telephone and email which culminated in the acceptance of a single order in Louisville." *Tube Turn Div. of Chemetron Corp. v. Patterson Co.*, 562 S.W.2d 99 (Ky. App. 1978). *See also Thompson v. Koko*, No. 3:11-CV-648-H, 2012 U.S. Dist. LEXIS

4

13226, at *7 (W.D. Ky. Feb. 3, 2012) (finding that out-of-state defendant's actions of sending emails and letters, confirming receipt of a wire transfer, and sending account statements to the plaintiff in Kentucky did not amount to transacting business in Kentucky). Similarly, in *Envirometric Process Controls, Inc. v. Adman Elec., Inc.*, No. 3:12CV-62-S, 2012 U.S. Dist. LEXIS 130015 (W.D. Ky. Sept. 11, 2012), the plaintiff, a Kentucky corporation, entered into a contract with an automotive manufacturer to construct conveyors at its assembly plant in Tennessee. *See id.* at *4. As part of its bid for the project the plaintiff included a subcontract from the defendant, a Tennessee corporation, to provide electrical installation services and materials. *See id.* at *5. When the installation was completed, the plaintiff claimed that the work was substandard and that the Tennessee defendant had overcharged for the job. *See id.* The plaintiff then sued the defendant in this Court, and the defendant moved to dismiss based on lack personal jurisdiction. *See id.* This Court held that the several e-mail messages and one telephone conversation about the contract were insufficient to prove purposeful availment and that the defendant had not been transacting business in Kentucky. *See id.* at *6-7.

In this case, Danziger's actions consisting of telephone calls and e-mail messages from another state likewise do not amount to "transacting business" in Kentucky. Although it is unclear how much of a role Danziger played in the negotiations of her husband's charitable gift, all of those communications occurred while Danziger was in Arizona. Danziger visited Kentucky on two occasions for personal reasons wholly unrelated to the Agreement. (Danziger Aff. ¶¶ 6-7, DN 5-2; Eriksen Aff. ¶ 13). As a result, Petitioners have not met their burden of establishing personal jurisdiction over Danziger in Kentucky.

If Danziger had transacted business in Kentucky—which she did not—the next step would be to consider whether exercising personal jurisdiction over the non-resident defendant

5

would offend federal due process. To satisfy due process, Petitioners must "establish with reasonable particularity sufficient minimum contacts with [Kentucky] so that the exercise of jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (internal quotation marks omitted) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). The Sixth Circuit has narrowed the due process requirements into a three-part test, each part of which must be met in order to assert personal jurisdiction over an out-of-state defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"The purposeful availment prong is satisfied when a defendant's contact with the forum state are such that he should reasonably anticipate being haled into court there. The defendant's contacts must be more than random, fortuitous, or attenuated." *Perkins v. Bennett*, No. 3:13-CV-695, 2013 U.S. Dist. LEXIS 160833, at *24 (W.D. Ky. Nov. 12, 2013) (internal quotation marks omitted) (internal citation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). In evaluating whether an interstate contract can justify the exercise of personal jurisdiction, the Sixth Circuit has repeatedly focused on where the negotiations and performance of a contract occurred. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

To satisfy the purposeful availment prong, Petitioners identify the following events: (i) Danziger ate lunch with Dwelly's wife and daughters in 2012; (ii) Danziger had two telephone conversations from Arizona with Petitioners' representatives in Kentucky; (iii) Danziger sent an e-mail message from Arizona to share her thoughts about the endowment; (iv) the Danzigers

6

retained an attorney in Arizona to review and negotiate the terms of the Agreement; (v) Danziger worked with her attorney in Arizona to revise the terms of the Agreement; (vi) Danziger facilitated the execution of the Agreement in Arizona in 2015; and (vii) the Danzigers received public recognition for the Agreement in Kentucky. (Pet'rs' Resp. Mot. Dismiss 18; Eriksen Aff. ¶¶ 24-25, 27).

None of Danziger's activities equates to transacting business in Kentucky. Danziger's meal with Dwelly's family had absolutely nothing to do with the Agreement, and no University representative was even present. All activities related to the Agreement occurred while Danziger was in Arizona and constituted only insubstantial connections to Kentucky.

Second, it cannot be established that the cause of action arises from Danziger's activities in the forum state. As previously stated, Danziger's activities in Kentucky were limited to personal visits. Although Petitioners characterize Danziger's 2012 Kentucky trip as being "for purposes of her relationship with Petitioners," as noted above it is uncontroverted that Danziger came to Kentucky to celebrate Muhammed Ali's birthday and she did not even speak to any University employees; rather, she only had lunch with an employee's wife and daughters. (Pet'rs' Resp. Mot. Dismiss 18). Further, this trip was three years *before* any discussion regarding the Agreement. (Eriksen Aff. ¶¶ 13-14).

The last factor requires the Court to determine whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. Because all three factors must be met to satisfy due process under the Kentucky's long-arm statute and the first two factors have not been satisfied, it is unnecessary to determine

whether the third factor has been met. *See id.* Thus, after considering all three factors, this Court lacks personal jurisdiction over Defendant.

In its response, Petitioners rely heavily on *Caesars* to show that charitable activity can constitute transacting business. Petitioners' reliance is misplaced. In that case, the Kentucky Supreme Court rejected the plaintiff's argument that the defendants had directed their business activities to Kentucky through "extensive advertising, direct mail solicitations, a rewards program, and extensive civic and charitable activities." *Id.* at 59. The court held that "there [was] no *reasonable and direct* nexus between the conduct that caused [the plaintiff's personal] injury and [the casino entities'] business activities in Kentucky." *Id.* Because the claim did not arise under any of the provisions of the long arm statute, the Kentucky Supreme Court held that Kentucky courts lacked personal jurisdiction over the Indiana defendants. *See id.*

Petitioners rely on actions they took to demonstrate the relationship between Danziger and Kentucky. For instance, they note that: Dwelly gave Danziger tickets to a NCAA Elite Eight men's basketball game; she benefitted from recognition received by the gift to the endowment; Dwelly regularly sent the Danzigers holiday cards and small gifts; Dwelly invited the Danzigers to the 2010 Kentucky Derby (which they did not attend); and Dwelly nominated the Danzigers as Kentucky Colonels. Petitioners—not Danziger—undertook each of these actions; therefore they cannot form the basis for subjecting Danziger to personal jurisdiction in Kentucky. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) ("[T]he mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (internal quotation marks omitted) (citation omitted))

Even if KRS 454.210(2)(a)(1) were satisfied, it would be unreasonable to exercise personal jurisdiction over Danziger. As the Kentucky Supreme Court stated in *Hinners v. Robey*, 336 S.W.3d 891 (Ky. 2011)**:**

> These cases [involving a single contract between a resident buyer and a nonresident seller] have resulted in the development of the well-settled point that a single contract touching upon the forum state will not, standing alone, subject the defendant to jurisdiction. Thus, in the usual case, a single contract with a nonresident, whether buyer or seller, and regardless of their method of interaction, will not justify jurisdiction over the defendant.

*Id.* at 901 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")).

The Court concludes that it lacks personal jurisdiction over Danziger. Not only does her activity not amount to transacting business in this Commonwealth, but the exercise of personal jurisdiction over Danziger under these circumstances would offend her due process rights. The Court will dismiss the claims asserted against Danziger.

### B. <u>Indispensable Party</u>

While not raised by the parties, this Court "may raise, *sua sponte*, a Federal Rule of Civil Procedure 19 problem." *Jaffer v. Standard Chartered Bank*, 301 F.R.D. 256, 259 (N.D. Tex. 2014). Because Danziger cannot be joined as a party to this action, the Court must determine whether her absence requires the dismissal of this action.

It appears evident that Danziger is a necessary party to this dispute. Fed. R. Civ. P. 19(a) defines a necessary party as one whose absence would prevent the Court from according "complete relief among existing parties," or who remains so situated that an ex parte disposition "may . . . impair or impede the person's ability to protect the interest" or "leave an existing party

9

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). In the Petition, Petitioners request that the Court determine the enforceability of the Agreement, which necessarily requires that Danziger be a party to this action. (Pet. ¶¶ 27-32). As discussed above, however, the Court lacks personal jurisdiction over Danziger and she cannot be joined as a party.

The Court must then determine whether this matter may proceed in Danziger's absence. Fed. R. Civ. P. 19(b) outlines the following factors to make that determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping the relief; or
>     (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Applying the factors to this dispute, dismissal is warranted. While Merrill Lynch would still be a party to this action after Danziger's dismissal, it is merely the custodian of the disputed IRA funds. Thus, as to the first two factors, there would clearly be prejudice that cannot be otherwise lessened or avoided in light of Danziger's absence. Likewise, because the Court cannot exercise personal jurisdiction over Danziger, it cannot adjudicate the rights between her and Petitioners. Thus, the Court cannot grant a complete, consistent, and efficient settlement of the controversy between the parties. *See Provident Tradesmen Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968). Finally, Petitioners can obtain an adequate remedy by filing suit against Danziger in a forum where a court can exercise personal jurisdiction over her.

For these reasons, Danziger is an indispensable party to this action who cannot be joined, and her absence mandates the dismissal of this matter. Accordingly, the Court will dismiss the action without prejudice pursuant to Fed. R. Civ. P. 19(b).

### III.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.  Respondent's Motion to Dismiss (DN 5) is **GRANTED**, and Petitioners' claims against Respondent Terry C. Danziger are **DISMISSED**.

2.  Because Respondent Terry C. Danziger is an indispensable party to this action and cannot be properly joined, this matter is **DISMISSED WITHOUT PREJUDICE** pursuant to Fed. R. Civ. P. 19(b). The Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
November 2, 2017

cc:  counsel of record